UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| PATRICIA I. SMITH, | ) | Case No.: 11-cv-3401-PSG |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING PLAINTIFF'S** |
| v. | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT AND GRANTING** |
| | ) | **DEFENDANT'S MOTION FOR** |
| MICHAEL J. ASTRUE, COMMISSIONER OF | ) | **SUMMARY JUDGMENT** |
| SOCIAL SECURITY, | ) | |
| | ) | **(Re: Docket No. 22, 23)** |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Plaintiff Patricia I. Smith ("Smith") appeals the decision by Defendant Michael J. Astrue,

Commissioner of Social Security ("Commissioner"), denying her disability insurance benefits and

supplemental security income.[1]  Smith moves for summary judgment.  The Commissioner opposes

the motion and cross-moves for summary judgment.  The matter was submitted without oral

argument pursuant to Civ. L.R. 16-5.  Having reviewed the papers and considered the arguments of

counsel, the court DENIES Plaintiff's motion and GRANTS Defendant's motion.

---

[1] The challenged decision was rendered by Administrative Law Judge Regina L. Sleater (the
"ALJ") on May 25, 2010. The ALJ's decision became final on May 12, 2011, when the Appeals
Council of the Social Security Administration denied Smith's request for administrative review of
the decision.

# I. BACKGROUND

The following facts are taken from the May 25, 2010 decision by the ALJ and the accompanying administrative record ("AR"). Smith was born on October 12, 1960.[2] She graduated from high school and has had no further formal education. In 1999, Smith began working at Macy's in the receiving department, where she unpacked and prepared clothing for sale.[3] On September 3, 2003, she sustained a repetitive injury after an evening working on affixing security sensors on clothing.[4] She awoke with significant pain in her left wrist, her dominant hand.[5]

## A.     Relevant Medical Evidence

Steven V. Moore, M.D. ("Moore") has treated Smith over a number of years. On August 26, 2006, Moore noted that Smith complained of chronic pain in her left wrist, radiating up her arm, which Smith stated had been symptomatic for over three years.[6] On this visit, Moore made objective findings that Smith had a positive Tinel's sign at the wrist flexor crease.[7] Moore's diagnoses showed chronic ulnar-sided left wrist pain and pain and numbness in the left hand suggestive of carpal tunnel syndrome.[8]

On May 3, 2007, Smith underwent surgery on her left wrist: an arthroscopy with "debridement of synovitis and degeneration of the dorsal wrist capsule," followed by further debridement and "radiofrequency bipolar cauterization via partially avulsed caphoid insertion of

---

[2] AR 131.

[3] *Id.* at 32, 34-35.

[4] *Id.* at 384, 312.

[5] *Id.* at 54, 312.

[6] *Id.* at 404.

[7] *Id.*

[8] *Id.*

2

Case No.: 11-3401 PSG
ORDER

the scapholunate interosseous ligament."[9]  Post-operative diagnoses noted a "[p]artial tear,

scapholunate interosseous ligament, with moderately pronounced fraying and fibrillation of the

partial avulsion, [and] grade III synovitis of the dorsoradial and dorsoulnar wrist capsule with mild

degeneration of the articular disc of the triangular fibrocartilage complex."[10]

On November 2, 2007, Smith returned to visit Moore.[11]  Moore noted she complained that

the pain in her left wrist had returned; she experienced intensified pain at "level 10" all day long.[12]

Upon examination, Moore noted limited motion in the left wrist with pain reported with each

extreme movement.[13]  Moore diagnosed scapholunate dissociation resulting in chronic persistent

wrist pain and discussed reconstructive measures or an invasive procedure such as proximal row

carpectomy.[14]

On January 2, 2008, Robert W. Carson, M.D. ("Carson") conducted a qualified medical

evaluation of Smith at the request of the insurance company representing Smith's employer

regarding Smith's worker's compensation claim.[15]  After reviewing her file and conducting a

medical examination, Carson noted Smith experienced a "50 percent loss of pre-injury capacity for

lifting, pushing, pulling, grasping, pinching, holding, torqueing, and other activities of comparable

physical effort with her left dominant upper extremity."[16]  Carson also found that because Smith

---

[9] *Id.* at 402.

[10] *Id.*

[11] *See Id.* at 393.

[12] *Id.*

[13] *See id.*

[14] *See id.*

[15] *See id.* at 384.

[16] *Id.* at 390.

Case No.: 11-3401 PSG
ORDER

1    was not able to resume work at Macy's since her surgical procedure, she qualified for injured

2    worker status.[17]

3           Smith continued to see Moore into the summer and fall of 2008.[18]  In August 2008, Moore

4    found limited motion of Smith's wrist but no swelling.[19]  He wrote a work release for Smith for 15

5    pounds, recommending that she find a modified position in her workplace.[20]  In September 2008,

6    Moore made objective findings of reported pain at extremities and subtle diffuse swelling about the

7    top of the left wrist.[21]  Moore discussed several salvage procedures with Smith as a possible

8    treatment plan, but recommended she get a second opinion.[22]

9           On November 25, 2008, State Agency consultant P. Frye, M.D. ("Frye") reviewed Smith's

10   medical record at the time but did not examine her.[23]  Frye opined that Smith had exertional

11   limitations in the upper extremities of occasionally lifting over 20 pounds, and frequently lifting

12   over 10 pounds.[24]  Frye found Smith's complaints to be credible.[25]

13          On January 19, 2009, Smith had several operative procedures performed: (1) proximal row

14   carpectomy of the left wrist, (2) radial styloidectomy, (3) neurectomy of dorsal sensory radial

15   nerve, (4) fluoroscopic control, and (5) radial, median, and ulnar nerve blocks for postoperative

16

_____

[17] *See id.*

[18] *See id.* at 297-300.

[19] *See id.* at 300.

[20] *See id.*

[21] *See id.* at 297.

[22] *See id.* at 298-99.

[23] *See id.* at 300-08.

[24] *See id.* at 302.

[25] *See id.* at 307.

Case No.: 11-3401 PSG
ORDER

1  pain management.[26]  Both preoperative and postoperative diagnoses noted "chronic scapholunate

2  dissociation with greater than 5 mm subluxation of scapholunatic articulation, and chronic wrist

3  pain."[27]

4       On April 1, 2009, State Agency consultant A. Khong, M.D. ("Khong") also reviewed

5  Smith's medical record.[28]  Like Frye, Khong concluded that Smith had exertional limitations in the

6  upper extremities of occasionally lifting over 20 pounds, frequently lifting over 10 pounds, and

7  could not perform frequent pushing, pulling, handling and fingering with the left arm.[29]  Khong

8  found the allegations not to be fully credible given the inconsistencies between the record and

9  Smith's allegations.[30]

10      On June 17, 2009, Smith again visited Moore to address a chronic wrist instability

11 problem.[31]  She also reported her wrist felt a bit better than before her operation, but she did still

12 experience some discomfort.[32]  On July 24, 2009, Smith visited again, and Moore recommended

13 against grasping, lifting, pulling, or pushing more than 5 pounds with her left hand.[33]

14      On October 19, 2009, Moore again noted objective findings of some induration over the

15 course of the distal radius, some subluxation, and a "little bit" of crepitance of the left wrist.

16 Moore found Smith could extend her wrist more than some other patients who have undergone the

---

[26] *See id.* at 323.

[27] *Id.*

[28] *See id.* 330-37.

[29] *See id.* at 331.

[30] *See id.* at 336.

[31] *See id.* at 430.

[32] *See id.*

[33] *Id.* at 426-28.

Case No.: 11-3401 PSG
ORDER

same surgical procedure.[34]  Smith's condition seemed "quite a bit better" than before the operation.[35]  Moore noted that Smith stated she had been doing "a little bit of lifting" working at a library part-time.[36]

On December 11, 2009, Smith again returned to see Moore with further complaints of her left wrist, which had improved post-surgery but was still hurting "more than she would like."[37] Smith reported pain while writing and holding the handset to talk on the phone.[38]  Moore's diagnosis remained "scapholunate disassociation, resulting in early posttraumatic arthritis."[39] Moore prescribed some Piroxicam and tramadol to treat the symptoms and recommended Smith tolerate the symptoms for as long as she can continue to do so.[40]  He noted that if the pain worsened, she could consider complete wrist arthrodesis.[41]

**B.      Hearing Testimony from Smith**

Smith testified at the hearing that she lives with her parents and several other people.[42]  A typical day involves showering, taking medication, watching TV, visiting her grandkids, and taking walks.[43]  She can drive, but only locally and at most for an hour.[44]

---

[34] *See id.* at 415.

[35] *Id.*

[36] *Id.*

[37] *Id.* at 413.

[38] *See id.*

[39] *Id.* at 414.

[40] *See id.*

[41] *See id.*

[42] *See id.* at 31-32.

[43] *See id.* at 49.

[44] *See id.* at 51.

Case No.: 11-3401 PSG
ORDER

Smith also testified that her left wrist continues to bother her.[45]  She has trouble putting on her clothes, opening jars and heavy doors, and doing her hair.[46]  She does some light chores, including washing the dishes and doing laundry.[47]  She does experience some difficulty in handling heavy pots,[48] but has gained more control now.[49]

She also testified she worked at Macy's until December 2007, when she took an extended leave of absence and then was not permitted to return.[50]  She has received some business training while at Macy's, but could not comprehend the subject matter.[51]  In December 2009, Smith applied for jobs at Dollar Tree, McDonald's, and Wal-Mart, but was not successful.[52]

C.    Vocational Expert

Thomas Linvill ("Linvill") testified at the hearing as a vocational expert.  Linvill stated Smith previously worked as a motel housekeeper, which is considered "unskilled" and "light" in its exertional demands, and as a general retail stock clerk, which is "semi-skilled" and "heavy" in its exertional demands," but "medium" as Smith actually performed it.[53]

Based on a hypothetical individual with Smith's age, education, vocational background, and the limitations of occasionally lifting 20 pounds and frequently lifting 10 pounds, limited pushing and pulling of the left hand, and limited handling and fingering with the left hand, Linvill opined

---

[45] *See id.* at 54.

[46] *See id.* at 54-55.

[47] *See id.* at 55.

[48] *See id.* at 56.

[49] *See id.* at 58.

[50] *See id.* at 37-38.

[51] *See id.* at 46-47.

[52] *See id.* at 45-46.

[53] *Id.*

7

Case No.: 11-3401 PSG
ORDER

she would not be able to perform her past relevant work.[54]   Linvill found that such an individual could, however, perform other jobs such as Storage-Facility Counter Clerk (2,000 jobs in the local economy) and Cashier II (1,000 jobs in the local economy).[55]

### C.   ALJ's Findings

On September 11, 2008, Smith filed an application for disability insurance benefits and supplemental security income.[56]   Her claims were denied on December 2, 2008, and again denied upon reconsideration on April 2, 2009.[57]   Smith appeared for a hearing before the ALJ on March 31, 2010.[58]   The ALJ determined that Smith was not disabled.[59]   At step one, the ALJ found it was unclear whether Smith had engaged in substantial gainful activity since December 20, 2007, the alleged onset date, because an exhibit indicated Smith was working at a library in October of 2009.[60]   At step two, the ALJ found Smith had a severe combination of impairments: degenerative joint disease and status post scapholunato ligament tear of the left wrist.[61]   At step three, the ALJ determined that Smith's combination of impairments did not meet or equal the Listing of Impairments in 20 CFR Par 404, Subpart P, Appendix 1.[62]   At step four, the ALJ determined that Smith had residual functional capacity to perform light work except that she cannot frequently use

---

[54] *See id.* at 65-66.

[55] *See id.*

[56] *Id.* at 10.

[57] *See id.*

[58] *See id.*

[59] *See id.*

[60] *See id.* at 12.

[61] *See id.*

[62] *See id.* at 13.

Case No.: 11-3401 PSG
ORDER

her upper left extremity to push and pull and engage in handling and fingering.[63] At step five, the

ALJ found there were adequate numbers of other jobs in the local economy that could be

performed by an individual with Smith's restrictions.[64]  The Appeals Council declined to review

the ALJ's decision, and the Commissioner adopted the decision on May 12, 2011.

The ALJ gave several grounds for her determination.  The ALJ found that Smith was not

entirely credible because while Smith stated at the hearing that she last worked at Macy's in

2007,[65] she told Dr. Moore that she had been "working part-time" at a library in October 2009.[66]

The ALJ did not, however, doubt that Smith had a significant impairment of her left wrist.[67]  The

ALJ gave the greatest weight to Dr. Khong's April 1, 2009 State Agency assessment because his

opinion was consistent with Dr. Carson's assessment and the record as a whole.[68]  The ALJ gave

little weight to Dr. Moore's assessment in July 2009 that Smith was limited to lifting and carrying

5 pounds[69] because it was "wildly inconsistent" with Dr. Carson's assessment as well as Dr.

Moore's own notes that Smith's condition had improved after her surgery in late 2009.[70]  For

purposes of the RFC determination, the ALJ noted that there were several other jobs available to

Smith, such as "usher," "cashier," or "counter clerk," amounting to significant numbers in the local

economy.[71]

_____

[63] *See id.*

[64] *See id.* at 18.

[65] *See id.* at 32.

[66] *Id.* at 16.

[67] *See id.*

[68] *See id.*

[69] *See id.* at 426.

[70] *Id.* at 17.

[71] *Id.* at 18.

Case No.: 11-3401 PSG
ORDER

## II. LEGAL STANDARDS

### A.  Standard for Reviewing the Commissioner's Decision

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision denying Smith benefits. The Commissioner's decision (here the underlying decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.[72]  In this context, the term "substantial evidence" means "more than a scintilla but less than a preponderance – it is such relevant evidence a reasonable mind might accept as adequate to support the conclusion."[73]  When determining whether substantial evidence exists to support the administrative record as a whole, the court must consider adverse as well as supporting evidence.[74]  Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the ALJ.[75]

### B. Standard for Determining Disability

Disability claims are evaluated using a five-step, sequential evaluation process.  In the first step, the Commissioner must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.[76]  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments that significantly limits the claimant's ability to do basic work activities; if not, a finding of "not

---

[72] *See Moncada v. Chater,* 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan,* 966 F.2d 1255, 1257 (9th Cir. 1992).

[73] *See Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1257.

[74] *See Drouin,* 966 F.2d at 1257; *Hammock v. Bowen,* 879 F.2d 498, 501(9th Cir. 1989).

[75] *Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1258.

[76] *See id.*

10

Case No.: 11-3401 PSG
ORDER

disabled" is made and the claim is denied.[77]  If the claimant has a "severe" impairment or

combination of impairments, the third step requires the Commissioner to determine whether the

impairment or combination of impairments meets or equals an impairment in the Listing of

Impairments; if so, disability is conclusively presumed and benefits are awarded.[78]  If the

claimant's impairment or combination of impairments does not meet or equal an impairment in the

Listing, the fourth step requires the Commissioner to determine whether the  claimant has

sufficient "residual functional capacity"[79] to perform his or her past work; if so, the claimant is not

disabled and the claim is denied.[80]  The plaintiff has the burden of proving that he or she is unable

to perform past relevant work.[81]  If the claimant meets this burden, a prima facie case of disability

is established.  The Commissioner then bears the burden of establishing that the claimant can

perform other substantial gainful work;[82] the determination of this issue comprises the fifth and

final step in the sequential analysis.

### III. DISCUSSION

### A.  Whether the ALJ gave proper weight to the opinion of Smith's treating physician.

Smith first takes issue with the ALJ's RFC finding that Smith could lift 10 pounds

frequently and 20 pounds occasionally, but could not perform frequent pushing, pulling, handling,

---

[77] *See id.*

[78] *See id.  See also Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995) (defining "Listing of Impairments" as those considered so severe that they are presumed to be disabling).

[79] A claimant's residual functional capacity ("RFC") is what he or she can still do despite existing exertional and nonexertional limitations. *See Cooper v. Sullivan,* 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[80] *See Drouin,* 966 F.2d at 1257; *Gallant v. Heckler,* 753 F.2d 1450, 1452 (9th Cir. 1984).

[81] *See id.*

[82] There are two ways for the Commissioner to meet the burden of showing that there is work in significant numbers in the national economy that claimant can do: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines.
*See Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999).

11

Case No.: 11-3401 PSG
ORDER

United States District Court
For the Northern District of California

and fingering with her left arm.[83]  Smith argues that the ALJ improperly gave the "greatest weight"

to Khong's medical opinion, while discounting the findings of her treating physician, Moore.[84]

The Ninth Circuit identifies three types of physicians whose opinions may be considered

for purposes of disability: (1) those who treat the claimant, (2) those who examine but do not treat

the claimant, and (3) those who do not treat or examine the claimant, but review the claimant's

file.[85]  While the opinions of treating physicians are generally given the greatest weight,[86] they may

be rejected if they are contradicted by another doctor or if they are not consistent with the record as

a whole.[87]  The ALJ may reject the treating physician's opinion or give greater weight to another so

long as she gives "specific and legitimate reasons that are supported by substantial evidence in the

record" for doing so.[88]

The ALJ articulated that she rejected Moore's July 2009 assessment that Smith was limited

to lifting and carrying 5 pounds because it was "wildly inconsistent" with the record as whole,

including Moore's own progress notes.[89]  This finding is supported by substantial evidence in the

record.

Moore opined that Smith could not grasp, lift, push, or pull more than 5 pounds with her

left hand, or perform handling or fingering for more than 30 minutes in an 8-hour work day.[90]  The

ALJ found that Moore's opinion was not consistent with the opinions of other physicians, who in

[83] *See* AR 16-17.

[84] *Id.*

[85] *See Lester*, 81 F.3d at 830.

[86] *See id.* (citing 20 C.F.R. § 404.1527(d)).

[87] *See id.*

[88] *Id.*

[89] *Id.* at 16-17.

[90] *See id.* at 17, 409-11, 426-28.

12

Case No.: 11-3401 PSG
ORDER

United States District Court<br/>For the Northern District of California

comparison assessed less extreme limitations.  For example, Carson, who examined Smith and

reviewed the record, found that Smith had lost 50% of her pre-injury ability to perform her work at

Macy's, which required "constantly…carrying, pushing and pulling… 35 to 40 pounds."[91]

Similarly, Frye opined that Smith could lift 10 pounds frequently and 20 pounds occasionally, and

perform occasional pushing and pulling, but could not perform frequent forceful activities or fine

manipulation with her left arm.[92]

      The ALJ also found that Moore's opinion for purposes of the RFC was inconsistent with his

own notes.  The Ninth Circuit has held this may serve as a "specific and legitimate" reason for

rejecting a physician's opinion.[93]  Here, Moore's progress notes after Smith's surgery indicated

that Smith's condition had improved.[94]  Smith herself reported to Moore that she was feeling

generally better.[95]  Moore's later progress notes continued to document Smith's improvement

through late 2009.[96]

      In contrast, Khong's opinion was consistent with the opinions of the other physicians and

the record as a whole.  Khong opined that Smith could lift 10 pounds frequently and 20 pounds

occasionally, and could not perform frequent pushing, pulling, handling and fingering with the left

---

[91] *See id.* at 384, 390.

[92] *See id.* at 275.

[93] *See Valentine v. Astrue,* 574 F.3d 685, 692-93 (9th  Cir. 2009) (holding that the ALJ properly rejected the treating physician's opinion because they were contradicted by the physician's own treatment progress notes, which showed plaintiff had improved significantly).

[94] *See* AR 415.

[95] *See id.*

[96] *See id.* at 415-16, 430, 432, 434 (Moore's notes after Smith's surgery stating that Smith reported feeling "considerably less pain" in March 2009, "quite a bit better than it had been before the operation" in October 2009, and that her wrist was still hurting, but "not quite as much as it was hurting before surgery" in December 2009).

13

Case No.: 11-3401 PSG
ORDER

arm.[97]  This is nearly identical to Frye's assessment and similar to Carson's opinion.  Also, as the

ALJ specifically noted, this was consistent with Smith's report that she had been working part-time

shelving books at a library.[98]  Therefore, the ALJ did not err in giving greater weight to Khong's

opinion.[99]

### B.  Whether the ALJ's credibility determination was proper.

Smith contends the ALJ improperly discounted her subjective complaints when the ALJ

determined that she was "not entirely credible."[100]

To determine whether a claimant's testimony of subjective complaints is credible, the ALJ

must engage in a two-step analysis.[101]  First, the ALJ must determine whether the claimant has

produced objective medical evidence supporting an impairment which could reasonably produce

the pain alleged.[102]  The claimant need only show that the impairment could reasonably produce

the symptom alleged, but not the degree of pain.[103]  Second, if there is no evidence of fabrication or

exaggeration, the ALJ may not reject the subjective symptom testimony without providing

"specific, clear, and convincing reasons for doing so."[104]  To determine whether the claimant's

testimony is credible, the ALJ may consider "ordinary techniques of credibility evaluation," such

---

[97] *See id.* at 16-17, 331-32, 336.

[98] *See id.* at 16.

[99] *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

[100] *Id.*

[101] *See Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007).

[102] *See id.*

[103] *See id.*

[104] *Id.*

14

Case No.: 11-3401 PSG
ORDER

1   as the claimant's prior inconsistent statements about her symptoms, other contradictory testimony,

2   inadequately explained failure to seek treatment, and the claimant's daily activities.[105]

3        The ALJ explained her reasoning for discounting Smith's subjective complaints.  She noted

4   that although the claimant told the ALJ at the hearing that she had last worked at Macy's in 2007,

5   Smith told Moore on October 19, 2009 that she had been "working part-time" at a library in the

6   Marina.[106]  This inconsistent statement casts doubt on Smith's credibility.[107] By her own

7   admission, Smith's work at the library involved lifting objects with her arms, which runs counter to

8   her testimony that her symptoms had been getting worse in July 2009.[108]  Smith also testified

9   inconsistently about when she last worked.[109]  Where the ALJ has set forth specific reasons for

10  disbelieving subjective testimony of excess pain, and those reasons are supported by substantial

11  evidence, the court may not "second-guess" those findings.[110]

12

13       Although Smith argues that the ALJ had a duty to develop the record to determine whether

14  Smith had actually worked at the library in 2009, a duty only arises when the evidence is

15  ambiguous or when the record is inadequate to allow the ALJ to properly evaluate it.[111]  Neither

16  circumstance was present here.  Because the ALJ did not use the note as conclusive evidence to

17  deny Smith disability benefits based on whether she has engaged in a substantial gainful activity,

18  the ALJ was not required to establish through payroll records that Smith had actually worked at the

19

20

21  _____

[105] *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

22  [106] AR 16.

23  [107] *See Smolen*, 80 F.3d at 1284.

24  [108] *See* AR 415.

25  [109] Although Smith testified she worked at Macy's full-time through December 20, 2007, she could
    not explain why she alleged disability beginning on May 4, 2007.  *See* AR 33-37.

26
    [110] *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).
27
    [111] *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).
28

Case No.: 11-3401 PSG
ORDER

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

library in 2009.  The ALJ properly considered the evidence as one data point in the credibility finding – credibility is not a black-and-white determination, but a balancing test based on a number of factors.[112]  The record was adequate to allow the ALJ to make a proper credibility determination because other evidence in the record supports her finding, such as Smith's inconsistent statement about when she last worked.[113]  The ALJ therefore had no obligation to further develop the record on this specific issue.

### C. Whether the ALJ inquired and reasonably identified whether Smith could perform alternate occupations.

Smith argues that the ALJ erred by failing to inquire about and recognize Linvill's vocational testimony departure from the Dictionary of Occupational Titles ("DOT"), and further did not obtain any "reasonable explanation" to justify the conflict.[114]  Smith identifies the purported unidentified conflict in the ALJ's hypothetical to Linvill, arguing that Linvill departed from the DOT in describing two examples of occupations that Smith would be able to perform.

Generally, a vocational expert's recognized expertise provides the necessary foundation for his testimony; no additional foundation is required.[115]  Under the Social Security Regulations, the ALJ must inquire whether the vocational expert's testimony comports with the DOT.  If the vocational expert's testimony departs from the DOT, the ALJ must explain the resolution of the conflict in her decision.[116]  Even if the ALJ fails to specifically ask if the VE's testimony departs from the DOT, this error would be harmless and the ALJ's decision will not be reversed if no

---

[112] *Cf. Smolen*, 80 F.3d at 1284.

[113] *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (finding other evidence in the record supported the ALJ's credibility finding).

[114] *See* SSR 00-4p.

[115] *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

[116] *See id.*

16

Case No.: 11-3401 PSG
ORDER

conflict exists or if the VE "provided sufficient support for [her] conclusion so as to justify any potential conflicts."[117]

At the hearing, the ALJ asked Linvill to consider an individual with the claimant's background, but "who can occasionally lift 20 pounds and frequently lift 10 pounds, who is limited in pushing and pulling to no frequent use of the upper left extremity and who is also limited in handling and fingering to no frequent use of the upper left extremity."[118]  Linvill testified that such a person would not be able to perform Smith's past relevant work, but identified two possible occupations: Storage-Facility Counter Clerk (DOT 295.367-026) and Cashier II (DOT 211.462.010).[119]  Smith argues, without citation to the DOT, that Linvill's testimony was incorrect because both occupations require "frequent reaching; handling; and fingering – they require great use of the upper extremities."[120]  However, nothing in the DOT description for these two occupations states that an individual with the limitations described by the ALJ could not perform these jobs.  There is no discrepancy between Linvill's testimony and the DOT, so the ALJ was justified in stating that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles."[121]

For Storage-Facility Counter Clerks, Linvill found there were 1,200 jobs in the local economy available to someone with Smith's limitations.[122]  For Cashier II jobs, Linvill noted some of these positions required a higher level of upper extremity use, some less.[123]  With this in mind,

---

[117] *Coleman v. Astrue*, 423 F. App'x 754, 756 (9th Cir. 2011).

[118] AR 64.

[119] *See id.* at 65-66.

[120] *See* Docket No. 22 at 20.

[121] *Id.*

[122] *See* AR 65.

[123] *See id.*

Case No.: 11-3401 PSG
ORDER

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Linvill adjusted the local economy jobs number and calculated that 1,000, not 2,000, Cashier II jobs would likely be available to an individual with Smith's limitations in her left, dominant arm.[124]  In doing so, Linvill did not depart from the DOT but provided a more tailored analysis of Smith's limitations, consistent with the basic guidelines of the DOT.[125]  Even if there were a conflict, the ALJ specifically noted in her decision that Linvill elaborated on the DOT description and thus provided support for resolving any potential conflicts, so any error would be harmless.[126]

In any event, the total number of jobs identified by the ALJ exceeds the amount required to show Smith could perform other work.  The Ninth Circuit has held that 1,000 to 1,500 jobs in a regional area constitute a significant number of jobs.[127]  The ALJ found that 1,200 Storage-Facility Counter Clerk positions were available, along with 200 Usher jobs, adding up to a total of 1,400 jobs even without the Cashier II positions challenged by Smith.[128]

### IV. CONCLUSION

Substantial evidence supports the ALJ's decision.  Accordingly, the court DENIES Plaintiff's motion and GRANTS Defendant's motion.

---

[124] *See id.* at 18, 65-66.

[125] *See* SSR 00-4p ("[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job... A VE… may be able to provide more specific information about jobs or occupations than the DOT").

[126] *See* AR 18.

[127] *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999); *See also Barker v. Secretary of Health & Human Services*, 882 F.2d 1474, 1479 (9th Cir. 1989) (holding that 1,266 jobs regionally is a significant number of jobs").

[128] *See* AR 18.

Case No.: 11-3401 PSG
ORDER

**IT IS SO ORDERED.**

Dated:  March 21, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No.: 11-3401 PSG
ORDER